**UNITED STATES v. SCHNEIDER-MAN et al.**

**UNITED STATES v. SPECTOR et al.**

Nos. 21883 and 21940.

United States District Court
S. D. California, Central Division.

Dec. 11, 1951.

See also 102 F.Supp. 52.

Walter S. Binns, Asst. U. S. Atty., Norman Neukom, Asst. U. S. Atty., and Ray H. Kinnison, Asst. U. S. Atty., all of Los Angeles, Cal., for the United States.

Margolis & McTernan by Ben Margolis, all of Los Angeles, Cal., for all defendants.

Alexander H. Schullman, Los Angeles, Cal., for defendants Philip Marshall Connelly and Dorothy Rosenblum Healey.

Leo A. Branton, Jr., Los Angeles, Cal., for defendant Henry Steinberg and Ben Dobbs.

Leo A. Sullivan, Oakland, Cal., for defendants Albert Jason Lima and Carl Rude Lambert.

A. L. Wirin, Los Angeles, Cal., for defendants Rose Chernin Kusnitz, Al Richmond and Frank E. Spector.

Norman Leonard, San Francisco, Cal., for defendants Loretta Starvus Stack, Ernest Otto Fox and Frank Carlson.

MATHES, District Judge.

It is charged in the indictment in each of these cases that the defendants conspired to commit offenses against the United States. 18 U.S.C. § 371. The offenses which the defendants stand accused of conspiring to commit are violations of the Smith Act. 54 Stat. 670 (1940); 18 U.S.C. (1946 ed.) § 10; 18 U.S.C. (1948 ed.) § 2385.

The material portions of the specific charges as laid in the indictments are in these words: "From and on or about April 1, 1945, and continuously thereafter up to and including the date of the filing of this indictment, in the Southern District of California, and elsewhere, * * * the defendants herein, unlawfully, wilfully, and knowingly did conspire with each other and with William Z. Foster, Eugene Dennis, John B. Williamson, Jacob Stachel, Robert G. Thompson, Benjamin J. Davis, Jr., Hen-

ry Winston, John Gates, Irving Potash, Gilbert Green, Carl Winter, and Gus Hall, co-conspirators but not defendants herein, and with divers other persons to the grand jury unknown, to commit offenses against the United States prohibited by Section 2 of the Smith Act * * * by so conspiring (1) unlawfully, wilfully, and knowingly to advocate and teach the duty and necessity of overthrowing the Government of the United States by force and violence, and (2) unlawfully, wilfully, and knowingly to organize and help organize as the Communist Party of the United States of America a society, group, and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence, in violation of Section 3 of the Smith Act * * *."

It is further charged in the indictments that, *inter alia*: "It was * * * a part of said conspiracy that said defendants and co-conspirators would write and cause to be written articles and directives in publications of the Communist Party of the United States of America including, but not limited to, 'Political Affairs,' 'Daily People's World,' 'Daily Worker,' and 'The Worker,' teaching and advocating the necessity of overthrowing and destroying the Government of the United States by force and violence;

"It was further a part of said conspiracy that said defendants and co-conspirators would conduct and cause to be conducted schools and classes * * * in which would be taught and advocated the duty and necessity of overthrowing and destroying the Government of the United States by force and violence as speedily as circumstances permit * * *."

It is further charged that: "In pursuance of said conspiracy and to effect the objects thereof, the defendants and co-conspirators did commit, among others, * * * [fifteen overt acts] * * *."

The defendants have presented a joint motion to dismiss the two indictments upon several grounds, only one of which requires discussion here. That ground is:

"The indictments do not state facts sufficient to constitute offenses against the United States."

As a corollary to the ground just stated, the defendants argue that: "The indictments * * * by reason of their failure to set forth all necessary elements of the crime they purport to charge, deprive these defendants of their right, in a criminal prosecution, to be informed of the nature and cause of the accusation, in violation of the Sixth Amendment."

The defendants at bar stand accused of what appears to be in substance the same conspiracy of which Dennis and others were convicted in the Southern District of New York. See Dennis v. United States, 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137; id. 2 Cir., 1950, 183 F.2d 201; id. sub nom., United States v. Foster, D.C., S.D.N.Y. 1949, 9 F.R.D. 367, 374–375. Indeed the defendants in the Dennis case are charged as "co-conspirators but not defendants" in the indictments here. [A comparison of the allegations of the indictments at bar with those of the indictment in the Dennis case has been submitted by counsel for the defendants and is included as an appendix hereto.]

The gist of the conspiracy provisions of the indictments at bar is that the defendants and others "unlawfully, wilfully and knowingly did conspire * * * to commit offenses against the United States prohibited by Section 2 of the Smith Act * * * by so conspiring (1) unlawfully, wilfully and knowingly to advocate and teach * * * and (2) unlawfully, wilfully and knowingly to organize and help organize * * * in violation of Section 3 of the Smith Act * * *."

■ As the Smith Act originally stood, § 3 prohibited a conspiracy to do "any of the acts" forbidden by the provisions of § 2, 54 Stat. 671 (1940). The Congress thus enacted in § 3 the old common law crime of conspiracy, which made the act of conspiring, without more, a public offense. Nash v. United States, 1913, 229 U.S. 373, 378, 33 S.Ct. 780, 57 L.Ed. 1232. Hence the doing of an overt act was not an essential

element of the crime of conspiracy defined in § 3. See Dennis v. United States, supra, 341 U.S. at pages 574, 590, 71 S.Ct. 857.

■ Sections 2 and 3 of the Smith Act later became §§ 10 and 11 of Title 18 of the United States Code, 54 Stat. 670 (1940). And when Title 18 of the United States Code was revised in 1948, the conspiracy section 3, 18 U.S.C. (1940 ed.) § 11, was repealed, 62 Stat. 867 (1948), leaving a conspiracy to commit the acts prohibited by § 2 of the Smith Act covered by the general conspiracy statute, 18 U.S.C. (1948 ed.) § 371, which does require as an essential element of the offense that an overt act be done "to effect the object of the conspiracy".

The defendants first direct attention to the last-above-quoted language of the indictments, namely, the allegations that they conspired "to commit offenses * * * prohibited by Section 2 of the Smith Act * * * by so conspiring * * * to advocate and teach * * *," as prohibited by § 2(a)(1), "and * * * to organize and help organize * * *," as prohibited by § 2(a)(3), "in violation of Section 3 of the Smith Act * * *." The substance of this, the defendants contend, is but to charge them with a conspiracy to commit a conspiracy. Cf. United States v. Armstrong, D.C., Ind.1920, 265 F.2d 683, 695.

The Government replies that the citation in the indictment of § 3 of the Smith Act is to be considered an error which, in keeping with Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C., "shall not be ground for dismissal of the indictment", since the error has not mislead the defendants to their prejudice. And the Government further urges that the language in question should be read as if the phrase "by so conspiring" consists of nothing more than the preposition "by," and as if the draftsman had employed the gerund or verbal noun rather than the infinitive of the verbs.

So read, the indictment charges that "the defendants * * * unlawfully, wilfully, and knowingly did conspire * * * to commit offenses * * * prohibited by Section 2 of the Smith Act * * * by * * * (1) unlawfully, wilfully, and knowingly" advocating and teaching "the duty and necessity of overthrowing the Government of the United States by force and violence, and (2) [by] unlawfully, wilfully, and knowingly" organizing and helping to organize "as the Communist Party * * * persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence * * *."

But the defendants reply that even so reading the indictments, the essential elements of an offense are not charged. Specifically, the defendants assert that the requisite intent is not alleged.

The gravamen of the charge as laid in the indictments is that the defendants "unlawfully, wilfully, and knowingly did conspire * * * to commit offenses against the United States * * * by * * * unlawfully, wilfully and knowingly" doing acts prohibited by § 2(a) (1) and § 2(a) (3) of the Smith Act.

■ Since the adverb "unlawfully" is but a conclusion of the pleader that what was done was in violation of law cf. Keck v. United States, 1899, 172 U.S. 434, 437, 19 S.Ct. 254, 43 L.Ed. 505, the charge is of a conspiracy to commit offenses by doing precisely what is forbidden by the language of § 2(a) (1) and § 2(a) (3) of the Smith Act. See 54 Stat. 670, 671 (1940); 18 U.S.C. (1940 ed.) § 10; id. (1948 ed.) § 2385.

Rule 7(c) of the Federal Rules of Criminal Procedure provides in part that: "The indictment * * * shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

■ "The general, and with few exceptions * * * the universal, rule, on this subject," said the Court in United States v. Hess, 1888, 124 U.S. 483, 486, 8 S.Ct. 571, 573, 31 L.Ed. 516, "is that all the material facts and circumstances embraced in the definition of the offense must be stated, or the indictment will be defective. No essential element of the crime can be omitted without destroying the whole pleading. The

omission cannot be supplied by intendment or implication, and the charge must be made directly, and not inferentially, or by way of recital."

To repeat the classic quotation from the opinion of Mr. Chief Justice Waite in United States v. Cruikshank, 1875, 92 U.S. 542, 558, 23 L.Ed. 588. "The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place and circumstances."

However, as was said in Wong Tai v. United States, 1927, 273 U.S. 77, 80–81, 47 S.Ct. 300, 301, 71 L.Ed. 545: "It is well settled that in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy * * *." See also Thornton v. United States, 1926, 271 U.S. 414, 423, 46 S.Ct. 585, 70 L.Ed. 1013; Williamson v. United States, 1908, 207 U.S. 425, 447–449, 28 S.Ct. 163, 52 L.Ed. 278.

And where the language of the statute defining the offense charged is, "according to the natural import of the words, fully descriptive of the offense, then ordinarily it is sufficient" to charge a substantive offense by simply adopting or paraphrasing the words of the statute. Potter v. United States, 1894, 155 U.S. 438, 444, 15 S.Ct. 144, 146, 39 L.Ed. 214. Armour Packing Co. v. United States, 1908, 209 U.S. 56, 83–84, 28 S.Ct. 428, 52 L.Ed. 681.

But as Mr. Justice Gray pointed out in United States v. Carll, 1881, 105 U.S. 611, 612–613, 26 L.Ed. 1135: "In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished; and the fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent."

In Ledbetter v. United States, 1898, 170 U.S. 606, 611–612, 18 S.Ct. 774, 776, 42 L.Ed. 1162, the court explained: "The cases wherein it is held that an indictment in the exact language of the statute is not sufficient are those wherein the statute does not contain all the elements of the offense * * *." See also United States v. Simmons, 1877, 96 U.S. 360, 362, 24 L.Ed. 819; United States v. Weber, D.C.N.D.Ill. 1947, 71 F.Supp. 88.

The gist of the first argument advanced by the defendants in support of their motions to dismiss is that "all of the elements necessary to constitute the offense intended to be punished" are not to be found in the language of the Smith Act; and since the indictments detail "in the words of the statute" the intended conduct by means of which the defendants purposed to commit the claimed offense they allegedly conspired to commit, an essential element of the charge is lacking.

Specifically the defendants point to the fact that the language of the statute declares it to be an offense "knowingly or willfully" to engage in the proscribed conduct. Whereas the Supreme Court was prompted to hold, in the light of the manifest purpose of the legislation and the inhibitions of the First Amendment, U.S. Const.Amend. I, "that the statute requires as an essential element of the crime proof of the intent of those who are charged with its violation to overthrow the Government by force and violence." See Dennis v. United States, supra, 1951, 341 U.S. at page 499, 71 S.Ct. 857, 862.

The Government urges on the other hand the charge that the defendants "unlawfully, wilfully, and knowingly did conspire * * * to commit offenses * * * prohibited by the Smith Act * * * by so conspiring (1) unlawfully, wilfully, and knowingly to advocate and teach * * *" is sufficient to constitute an allegation of the "essential element * * * of the intent" to accomplish the overthrow.

It is true that intent "may always be averred in general terms". Evans v. United States, 1894, 153 U.S. 584, 594, 14 S.Ct. 934, 939, 38 L.Ed. 839. But the specific inquiry here is whether the phrase "unlawfully, wilfully, and knowingly" either denotes or connotes the specific intent which has been held to be an essential element of any offense against the Smith Act.

"Unlawfully" as noted before is but a conclusion which means nothing more than allegedly contrary to law. Cf. Bannon v. United States, 1895, 156 U.S. 464, 466–467, 15 S.Ct. 467, 39 L.Ed. 494; Davis v. Utah, 1894, 151 U.S. 262, 266, 14 S.Ct. 328, 38 L.Ed. 153.

To act "knowingly" means to act voluntarily and purposely, and not because of mistake or inadvertence or other innocent reason. See United States v. Murdock, 1933, 290 U.S. 389, 394, 54 S.Ct. 223, 78 L.Ed. 381.

As stated in United States v. Illinois Cent. R. Co., 1938, 303 U.S. 239, 242–243, 58 S.Ct. 533, 535, 82 L.Ed. 773: " 'Willfully' means something not expressed by 'knowingly,' else both would not be used conjunctively."

Hence to act "wilfully" means to act not only voluntarily and purposely but also with specific intent to violate the law, or with reckless disregard as to whether or not the act is a violation of law. Hartzell v. United States, 1944, 322 U.S. 680, 686–687, 64 S.Ct. 1233, 88 L.Ed. 1534; Screws v. United States, 1945, 325 U.S. 91, 101–107, 65 S.Ct. 1031, 89 L.Ed. 1495.

If a conspiracy to bring about overthrow of the Government by force and violence were charged in the indictments at bar, it would be sufficient to allege that such a conspiracy was willful. Schenck v. United States, 1919, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470; Hartzell v. United States, supra, 322 U.S. at pages 681, 686–687, 690, 691, 64 S.Ct. 1233. Indeed the mere allegation that the defendants conspired to commit the offense would denote wilfullness. Frohwerk v. United States, 1919, 249 U.S. 204, 208, 39 S.Ct. 249, 63 L.Ed. 561.

Here, however, the charge is of a conspiracy " * * * wilfully * * * to advocate and teach * * * and wilfully * * * to organize and help organize * * *." And it is urged the allegation that "the defendants * * * wilfully * * * did conspire * * * to commit offenses * * * prohibited by * * * the Smith Act * * *" is sufficient to carry with it every allegation of intent necessary to constitute the substantive offense.

Where a conspiracy to commit an offense is charged, observed Mr. Chief Justice White (then Associate Justice) in Williamson v. United States, supra, 207 U.S. at page 447, 28 S.Ct. at page 171, "the conspiracy is the gist of the crime, and certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is requisite in stating the object of the conspiracy." To the same effect, see Wong Tai v. United States, supra, 273 U.S. at page 81, 47 S.Ct. 300; and see Dennis v. United States, supra, 341 U.S. at pages 572–577, 71 S.Ct. 857.

Assuming then that the indictments here would be sufficient if the charge omitted all mention of the conduct by which, as well as the state of mind with which, the alleged conspirators purposed "to commit offenses * * * prohibited by Section 2 of the Smith Act," the fact is the draftsman did not choose to do so. Instead he chose to "descend to particulars", United States v. Cruikshank, supra, 92 U.S. at page 558, 23 L.Ed. 588, and allege in the language of the statute the means—both act and intent —whereby the alleged conspirators purposed "to commit offenses against the United States."

The result is the charge that the defendants conspired to commit the alleged of-

94

fenses against the United States by means of (1) wilfully advocating and teaching, and by means of (2) wilfully organizing and helping to organize. Yet in Dennis v. United States, supra, 341 U.S. at pages 499, 509–511, 71 S.Ct. 857, it appears to have been expressly held that conduct proscribed by § 2 of the Smith Act which impinges upon freedom of speech, even though willful, cannot constitute an offense against the United States unless the acts be done with the specific intent to overthrow the Government by force and violence.

It is pointed out, however, that the indictment in the Dennis case, see id. sub nom. United States v. Foster, supra, D.C., 9 F.R.D. at pages 374–375, does not contain any allegation of intent to overthrow, which the Supreme Court characterized "as an essential element of the crime". See Dennis v. United States, supra, 341 U.S. at pages 499–500, 71 S.Ct. 857, 862. From that fact it is argued the court impliedly held that inclusion of such allegation is not essential to sufficiency of the indictment.

The question of failure of the indictment in the Dennis case to allege requisite intent was raised by the defense in the Court of Appeals, and the opinion there states "it is patent on the merest inspection that the indictment is sufficient". United States v. Dennis, supra, 2 Cir., 183 F.2d at pages 207, 214–215. The question was also presented to the Supreme Court upon petition for certiorari, but the court expressly limited the scope of the writ to constitutional questions. Dennis v. United States, supra, 341 U.S. at pages 495–496, 71 S.Ct. 857. The Government nevertheless urges that "the Supreme Court necessarily had to pass on the sufficiency of the indictment" and "would have raised this issue *sua sponte* even though it had not been briefed."

The Government also points to the fact that the opinion states: "The structure and purpose of the statute demand the inclusion of intent as an element of the crime. Congress was concerned with those who advocate and organize for the overthrow of the Government. Certainly those who recruit and combine for the purpose of advocating overthrow intend to bring about that overthrow." Id. 341 U.S. at page 499, 71 S.Ct. at page 862.

It is true of course that "failure of the indictment * * * to charge an offense shall be noticed by the court at any time during the pendency of the proceeding." Fed. R. Crim. P. 12(b) (2). And the court would customarily pass upon that question before reaching constitutional issues. Cf. United States v. C.I.O., 1948, 335 U.S. 106, 110, 68 S.Ct. 1349, 92 L.Ed. 1849.

In the Dennis case, however, the Government urged upon appeal that because of arguments made and instructions requested by the defense, "they are in no position to claim that they were not fully advised of the element of specific intent in the charges brought against them."

In these circumstances the Court may well have concluded that any defect as to the allegations of intent in the indictment in the Dennis case did not "affect substantial rights" of the defendants, and for that reason should be "disregarded" in keeping with the mandate of Rule 52(a) of the Federal Rules of Criminal Procedure. See Rosen v. United States, 1896, 161 U.S. 29, 33–34, 41, 16 S.Ct. 434, 480, 40 L.Ed. 606; Price v. United States, 1897, 165 U.S. 311, 314–315, 17 S.Ct. 366, 41 L.Ed. 727; Gora v. Hawaii, 9 Cir., 1946, 152 F.2d 933, 935, certiorari denied, 1946, 328 U.S. 862, 66 S.Ct. 1362, 90 L.Ed. 1632; cf. United States v. Staats, 1850, 8 How. 41, 49 U.S. 41, 44, 12 L.Ed. 979.

■ To hold then that "wilfully," as employed in the Smith Act and in the indictments at bar, denotes an "intent * * * to overthrow the Government by force and violence". Dennis v. United States, supra, 341 U.S. at page 499, 71 S.Ct. at page 862, would seem to expand unduly the content of that already overworked adverb. Cf. Williams v. United States, 1951, 341 U.S. 97, 101, 71 S.Ct. 576, 95 L.Ed. 774; American Communications Ass'n v. Douds, 1950, 339 U.S. 382, 413, 70 S.Ct. 764, 94 L.Ed. 925; Screws v. United States, supra, 325 U.S. at pages 101–107, 65 S.Ct. 1031; United States v. Ragen, 1942, 314 U.S. 513,

524, 62 S.Ct. 374, 86 L.Ed. 383; Omaechevarria v. Idaho, 1918, 246 U.S. 343, 348, 38 S.Ct. 323, 62 L.Ed. 763. Moreover, it could not reasonably be held that "wilfully" even so much as connotes the necessary time element—intent to cause forcible and violent overthrow "as soon as circumstances permit." See Dennis v. United States, 341 U.S. at page 518, 71 S.Ct. at page 872.

Corollary to the argument that the indictments omit to charge requisite intent, the defendants contend that: "The indictment fails to state an offense, in that it fails to allege facts disclosing a 'clear and present danger' from the defendants."

The defendants point to their unquestioned constitutional right "to be informed of the nature and cause of the accusation" against them, U.S.Const. Amend. VI, and the declaration in Foster v. United States, 9 Cir., 1918, 253 F. 481, 482: "To furnish them with that information it was necessary to set forth in the indictment the particular facts and circumstances which rendered them guilty and to make specific that which the statute states in general. * * * Here the statute is very general in its terms, and the indictment merely charges in the language of the statute."

And the defendants further cite Fontana v. United States, 8 Cir., 1919, 262 F. 283, 288 where the court said: "It is an elementary rule of criminal law that when language does not constitute a crime if uttered under some circumstances, and does constitute a crime if uttered under other circumstances, it is not enough to charge that it was used with intent to violate the law. That would be a mere conclusion. The facts must be set forth, so that the court can determine, and not the pleader, whether or not they constitute the crime." See also United States v. Korner, D.C.S.D.Cal. 1944, 56 F.Supp. 242.

It was in Schenck v. United States, supra, 1919, 249 U.S. 47, 52, 39 S.Ct. 247, 249 —which, like the Foster and Fontana cases just cited was a prosecution under the Espionage Act of 1917, 40 Stat. 217 (1917)— that the "clear and present danger" rule was announced in these words: "The question in every case is whether the words used are used in such circumstances and

are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent. It is a question of proximity and degree."

"This is a rule of reason", wrote Mr. Justice Brandeis with the concurrence of Mr. Justice Holmes in Schaefer v. United States, 1920, 251 U.S. 466, 482–483, 40 S.Ct. 259, 264, 64 L.Ed. 360. And he added: "Correctly applied, it will preserve the right of free speech both from suppression by tyrannous, well-meaning majorities, and from abuse by irresponsible, fanatical minorities."

Rules of law expressed in the most absolute terms are always subject to such exceptions as are dictated by reason. See Dennis v. United States, supra, 341 U.S. at pages 524–525, 538–539, 71 S.Ct. 857. Our common-law system of justice is founded upon the idea that "reason, not arbitrary will, is to be the ultimate ground of decision." Pound, The Spirit of the Common Law, 1921, 182–183.

The unqualified declaration in the First Amendment that "Congress shall make no law * * * abridging the freedom of speech, or of the press * * *" has never been literally enforced. Robertson v. Baldwin, 1897, 165 U.S. 275, 281, 17 S.Ct. 326, 41 L.Ed. 715; Gompers v. United States, 1914, 233 U.S. 604, 610, 34 S.Ct. 693, 58 L.Ed. 1115. The right to speak and the right to print, like all legal rights under our system, are accompanied always by correlative legal duties to exercise those rights reasonably under the circumstances, and hence are subject to reasonable abridgements or restraints.

But we so prize freedom of expression— indeed deem it so essential to the maintenance of "a government of laws and not of men". See Abrams v. United States, 1919, 250 U.S. 616, 630, 40 S.Ct. 17, 63 L.Ed. 1173; Dennis v. United States, supra, 341 U.S. at pages 544–546, 71 S.Ct. 857, that the bounds of restraint upon speech and press which will be tolerated as reasonable are narrow in the extreme. That narrowness is sought to be expressed in terms of a definite standard in the "clear and present dan-

ger" rule. To borrow the words of Mr. Justice Holmes in Abrams v. United States, supra, 250 U.S. at pages 630–631, 40 S.Ct. at page 22: "Only the emergency that makes it immediately dangerous to leave the correction of evil counsels to time warrants making any exception to the sweeping command, 'Congress shall make no law * * * abridging the freedom of speech.'"

It is within the bounds of reasonable abridgement of freedom of expression, as Mr. Chief Justice Hughes said in Near v. Minnesota, 1931, 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357 that: "The security of the community life may be protected against incitements to acts of violence and the overthrow by force of orderly government."

The learned justice who coined the "clear and present danger" phrase, also declared in Abrams v. United States, supra, 250 U.S. at page 627, 40 S.Ct. at page 21: "I do not doubt for a moment that * * the United States constitutionally may punish speech that * * * is intended to produce a clear and imminent danger * * *." To the same effect, see Whitney v. California, 274 U.S. 357, 373, 47 S.Ct. 641, 71 L.Ed. 1095; see also Chafee, Free Speech in the United States, 1941, 129–135; Richardson, Freedom of Expression and the Function of Courts, 1951, 65 Harv.L.Rev. 1.

In the cases at bar, the "clear" danger envisioned in the Smith Act is the act of engaging in the proscribed advocacy or teaching with intent to bring about ultimately the overthrow of government by means of force or violence. Dennis v. United States, supra, 341 U.S. at pages 499–500, 71 S.Ct. 857.

The "present" danger consists in the specific intent of advocate or teacher to accomplish the objective of forcible overthrow as speedily as possible. Id. 341 at pages 508–511, 71 S.Ct. 857.

The indictments here are clearly sufficient to comply with the constitutional requirement that the accused "be informed of the nature * * * of the accusation". U.S.Const. Amend. VI. So the burden of this phase of the argument must be that while the "nature" of the accusation may be known from the face of the indictment, the "cause" cannot be, since for all that appears the defendants could not be constitutionally prevented from expressing their beliefs in the form and manner and by the means alleged in the indictments.

To state it differently, the indictments charge that the defendants conspired to commit offenses against the United States by doing what the language of the statute forbids, and the Supreme Court has held in the Dennis case that in the face of the prohibitions of the First Amendment, such acts cannot be held to constitute an offense against the United States unless done with the intent to bring about overthrow of the Government by force and violence "as speedily as circumstances would permit." See Dennis v. United States, supra, 341 U.S. at pages 499–500, 71 S.Ct. 857, 862. Which appears to be but another way of saying that, while the facts as alleged may sufficiently disclose a "clear" danger of "bringing about the evil within the power of Congress to punish" [id. 341 at page 509, 71 S.Ct. at page 867], nothing at all is alleged in the indictments to charge that the "clear" danger is also a "present" one.

The Government's reply to these suggestions is that the adverb "wilfully" as used in § 2 of the Smith Act has been construed in the Dennis case to mean with "the intent * * * to overthrow the Government by force and violence." [Id. at pages 499–500, 71 S.Ct. at page 862]. Assuming such to be the content of "wilfully" as used in the Smith Act, that meaning can only serve to charge a "clear" danger, and the element of "present" danger is still missing from the indictments. Cf. Hartzell v. United States, supra, 322 U.S. at pages 686–687, 64 S.Ct. 1233.

It may well be, as the Government urges, the Dennis case should be interpreted as holding that "wilfully," as used in § 2 of the Act, denotes "with the intent to cause the overthrow or destruction of the Government of the United States by force and violence as speedily as circumstances would permit." See Dennis v. United States, supra, at pages 512, 499–500, 518, 71 S.Ct. at page 868.

But to import that language into these indictments by expanding the content of "wilfully" is to adopt a device for which there is but doubtful warrant; especially in face of the omission from the charging clauses of the indictments of any allegation suggesting the phrase "as speedily as circumstances * * * permit", and the inclusion of that time phrase in the latter portion of the indictments where it is alleged what the "schools and classes" would teach and advocate as a "further * * * part of said conspiracy."

Moreover, faced as we are in these cases with a long and expensive trial, it would seem rash to resolve this doubt in favor of the Government, and particularly so when it is recalled that the charging portions of the indictments contain an admittedly ambiguous sentence structure and an admittedly erroneous statutory citation.

 For the reasons stated, caution added to grave doubt—*abundans cautela non nocet*—prompts the holding that the indictments do not allege the intent essential to charge that the means claimed to be employed by the conspirators would, if pursued, constitute any criminal offense against the United States. "Conviction upon a charge not made would be sheer denial of due process." De Jonge v. Oregon, 1937, 299 U.S. 353, 362, 57 S.Ct. 255, 259, 81 L.Ed. 278.

██ Accordingly the motions of the defendants to dismiss the indictments will be granted. However, in view of the Government's contentions that the indictments as now drafted do in effect contain these allegations of requisite intent, and in view of the representations made at the bar that the prosecution expects to prove the defendants acted with this specific intent, the court will proceed upon the assumption that all defects in the existing indictments will be promptly cured.

Rule 12(b) (5) of the Federal Rules of Criminal Procedure provides in part: "If the court grants a motion based on a defect * * * in the indictment * * * it may also order that the defendant be held in custody or that his bail be continued for a specified time pending the filing of a new indictment * * *."

Hence the court will order that the bail of each of the defendants who may be at liberty on bail be continued, and that each of the defendants in both cases, who may be in custody in default of bail, be held in custody, pursuant to Fed.R.Crim.P. 12(b) (5), for a period of ten days from this date pending the filing of a new indictment in each case.

Counsel for defendants will prepare and settle under local rule 7 within five days formal orders embodying the rulings herein made.

## Appendix

### A Comparison of the Indictments
### In Cases of Dennis, et al. and Schneiderman, et al.

*Dennis Indictment:*

The Grand Jury charges:

1. That from on or about April 1, 1945, and continuously thereafter up to and including the date of the filing of this indictment, in the Southern District of New York, and elsewhere, William Z. Foster, Eugene Dennis, also known as Francis X. Waldron, Jr., John B. Williamson, Jacob Stachel, Robert G. Thompson, Benjamin J. Davis, Jr., Henry Winston, John Gates, also known as Israel Regenstreif, Irving Potash, Gilbert Green, Carl Winter, and Gus Hall, also known as Arno Gust Halberg, the

*Schneiderman indictment:*

The Grand Jury charges:

1. From and on or about April 1, 1945, and continuously thereafter up to and including the date of the filing of this indictment, in the Southern District of California, and elsewhere, William Schneiderman, Dorothy Rosenblum Healey, Albert Jason Lima, Oleta O'Connor Yates, Carl Rude Lambert, Philip Marshall Connelly, Rose Chernin Kusnitz, Al Richmond, also known as Abraham Richman, Ernest Otto Fox, also known as Ernest Otto Fuchs, Henry Steinberg, Loretta Starvus Stack, and

defendants herein, unlawfully, wilfully, and knowingly, did conspire with each other, and with divers other persons to the Grand Jurors unknown, to organize as the Communist Party of the United States of America a society, group, and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence, and knowingly and wilfully to advocate and teach the duty and necessity of overthrowing and destroying the Government of the United States by force and violence, which said acts are prohibited by Section 2 of the Act of June 28, 1940 (Section 10, Title 18, United States Code), commonly known as the Smith Act.

(Note: order of stating the two objectives of conspiracy is reversed.)

2. It was part of said conspiracy that defendants would convene, in the Southern District of New York, a meeting of the National Board of the Communist Political Association on or about June 2, 1945, to adopt a draft resolution for the purpose of bringing about the dissolution of the Communist Political Association, and for the purpose of organizing as the Communist Party of the United States of America a society, group, and assembly of persons dedicated to the Marxist-Leninist principles of the overthrow and destruction of the Government of the United States by force and violence.

3. It was further a part of said conspiracy that said defendants would thereafter convene, in the Southern District of New York, a meeting of the National Committee of the Communist Political Association on or about June 18, 1945, to amend and adopt said draft resolution.

Mary Bernadette Doyle, the defendants herein, unlawfully, wilfully and knowingly did conspire with each other *and with William Z. Foster, Eugene Dennis, John B. Williamson, Jacob Stachel, Robert G. Thompson, Benjamin J. Davis, Jr., Henry Winston, John Gates, Irving Potash, Gilbert Green, Carl Winter, and Gus Hall, co-conspirators but not defendants herein,* and with divers other persons to the grand jury unknown, *to commit offenses against the United States prohibited by Section 2 of the Smith Act, 54 Stat. 671, 18 U.S.C. (1946 Ed.) 10, and 18 U.S.C. (1948 Ed.) 2385, by so conspiring (1) unlawfully,* wilfully and knowingly to advocate and teach the duty and necessity of overthrowing the Government of the United States by force and violence, and (2) unlawfully, wilfully, and knowingly to organize *and help organize* as the Communist Party of the United States of America a society, group, and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence, in violation of Section 3 of the Smith Act, 54 Stat. 671, 18 U.S.C. (1946 Ed.) *11,* and 18 U.S.C. (1948 Ed.) *371;*

(no corresponding allegation)

(no corresponding allegation)

4. It was further a part of said conspiracy that said defendants would thereafter cause to be convened, in the Southern District of New York, a special National Convention of the Communist Political Association on or about July 26, 1945, for the purpose of considering and acting upon said resolution as amended.

(no corresponding allegation)

5. It was further a part of said conspiracy that said defendants would induce the delegates to said National Convention to dissolve the Communist Political Association.

(no corresponding allegation)

6. It was further a part of said conspiracy that said defendants would bring about the organization of the Communist Party of the United States of America as a society, group, and assembly of persons to teach and advocate the overthrow and destruction of the Government of the United States by force and violence, and would cause said Convention to adopt a Constitution basing said Party upon the principles of Marxism-Leninism.

(No corresponding allegation, except as covered by paragraph (1))

7. It was further a part of said conspiracy that said defendants *would bring about the election of officers and the election of a National Committee of said Party, and be elected as officers and as members of said National Committee and the National Board of said Committee,* and in such capacities said defendants would assume leadership of said Party and responsibility for its policies and activities, *and would meet from time to time to formulate, supervise and carry out the policies and activities of said Party.*

(2) It was part of said conspiracy that said defendants and co-conspirators would become *members,* officers, and functionaires *of said Party, knowing the purposes of the Party,* and in such capacities would assume leadership in said Party and responsibility for *carrying out* its policies and activities *up to and including the date of the filing of this indictment;*

8. It was further a part of said conspiracy that said defendants would cause to be organized Clubs, and District and State units of said Party, and would recruit and encourage the recruitment of members of said party.

(3) It was further part of said conspiracy that said defendants and co-conspirators would cause to be organized *Groups,* Clubs, *Sections,* District and State Units of said Party *in the State of California and elsewhere* and would recruit and encourage recruitment of members of said Party, *concentrating on recruiting persons employed in key basic industries and plants;*

9. It was further a part of said conspiracy that said defendants would publish and circulate, and cause to be published and circulated, books, articles,

(4) It was further a part of said conspiracy that said defendants and co-conspirators would publish and circulate and cause to be published and circulat-

magazines, and newspapers advocating *the principles of Marxism-Leninism.*

(No corresponding allegation)

10. It was further a part of said conspiracy that said defendants would conduct, and cause to be conducted, schools and classes for *the study of* the principles of Marxism-Leninism, in which would be taught and advocated the duty and necessity of overthrowing and destroying the Government of the United States by force and violence.

(No corresponding allegation)

(No corresponding allegation)

(No corresponding allegation)

ed books, articles, magazines, and newspapers *teaching* and advocating *the duty and necessity of overthrowing and destroying the Government of the United States by force and violence;*

(5) It was further a part of said conspiracy that said defendants and co-conspirators would write and cause to be written articles and directives in publications of the Communist Party of the United States of America, including, but not limited to, "Political Affairs," "Daily People's World," "Daily Worker," and "The Worker," teaching and advocating the necessity of overthrowing the Government of the United States by force and violence;

(6) It was further a part of said conspiracy that said defendants would conduct and cause to be conducted schools and classes for *indoctrination of recruits and members of said Party* in the principles of Marxism-Leninism in which would be taught and advocated the duty and necessity of overthrowing the Government of the United States by force and violence *as speedily as circumstances permit;*

(7) It was further a part of said conspiracy that said defendants and co-conspirators would agree upon and carry into effect detailed plans for the vital parts of the Communist Party of the United States of America to go underground in the event of emergency and from said underground position to continue in all respects the conspiracy described in paragraph (1);

(8) It was further a part of said conspiracy that said defendants and co-conspirators would use false names, passports, and other false documents in order to conceal their identities and activities as members and functionaries of said Party;

(9) It was further a part of said conspiracy that defendants and co-conspirators would do other and further things to conceal the existence and operations of said conspiracy; and

In pursuance of said conspiracy and to effect the objects thereof in the Southern District of California, the defend-

ants and co-conspirators did commit, among others, the following

Overt Acts:

(No overt acts)

1. On or about July 17 and 18, 1948, William Schneiderman, Dorothy Rosenblum Healey, Albert Jason Lima, Oleta O'Connor Yates, Carl Rude Lambert, Al Richmond, also known as Abraham Richman, Loretta Starvus Stack, and Mary Bernadette Doyle, defendants herein did attend and participate in a Convention of the Communist Party of the State of California at Park Manor, Sixth Street and Western Avenue, Los Angeles, California;

2. On or about August 20, 1948, Mary Bernadette Doyle, a defendant herein did attend and participate in a meeting of the Morgan Hull Club in San Diego, California;

3. On or about August 21, 1948, Loretta Starvus Stack, a defendant herein, did prepare and issue a directive and cause it to be circulated by the California State Committee of the Communist Party;

(No overt acts)

4. On or about August 21, 1948, Al Richmond, also known as Abraham Richman, a defendant herein, did issue a directive and cause it to be circulated by the California State Committee of the Communist Party;

5. On or about January 21, 1949, Henry Steinberg, a defendant herein, did attend and participate in a meeting;

6. On or about May 20, 1949, Rose Chernin Kusnitz, a defendant herein, did attend and participate in a meeting held at 847 South Grand Avenue, Los Angeles, California;

7. On or about December 7, 1949, William Schneiderman and Dorothy Rosenblum Healey, defendants herein, did attend and participate in a meeting at Park View Manor, 2200 West Seventh Street, Los Angeles, California;

8. On or about January 20, 1950, William Schneiderman, a defendant herein, did attend and participate in a meeting at Embassy Auditorium, Los Angeles, California;

(No overt acts)

In violation of Sections 3 and 5 of the Act of June 28, 1940 (Sections 11 and 13, Title 18, United States Code), commonly known as the Smith Act.

A True Bill

 Jerome S. Blumauer
 Acting Foreman

John F. X. McGohey
United States Attorney

9. On or about February 15, 1950, Mary Bernadette Doyle, a defendant herein, did attend and participate in a meeting held at 7891 Normandie Street, San Diego, California;

10. On or about April 6, 1950, William Schneiderman, a defendant herein, did attend and participate in a meeting at 3875 City Terrace Boulevard, Los Angeles, California;

11. On or about June 12, 1950, Albert Jason Lima, a defendant herein, did attend and participate in a meeting at 2200 West Seventh Street, Los Angeles, California;

12. On or about June 24, 1950, Philip Marshall Connelly, Mary Bernadette Doyle, and Albert Jason Lima, defendants herein, did attend and participate in a meeting at Park Manor, 607 South Western Avenue, Los Angeles, California;

13. On or about November, 1950, Ernest Otto Fox, also known as Ernest Otto Fuchs, did prepare and issue a directive and cause it to be circulated;

14. On or about April 9, 1951, Carl Rude Lambert, a defendant herein, did attend and participate in a meeting at 405 De La Guerra Street, Santa Barbara, California;

15. On or about July 24, 1951, Oleta O'Connor Yates, a defendant herein, did attend and participate in a meeting at 124 West Sixth Street, Los Angeles, California.

(No such conclusion, except as covered by paragraph (1))

A True Bill

 Robert B. Young
 Foreman

Ernest A. Tolin
United States Attorney