# DAVIS *v.* UTAH TERRITORY.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 961.  Submitted November 15, 1893. — Decided January 8, 1894.

In Utah it is not necessary that an indictment for murder should charge that the killing was unlawful.

An indictment which clearly and distinctly alleges facts showing a murder by the unlawful killing of a human being with malice aforethought is good as an indictment for murder under the Utah statutes, although it may not indicate upon its face, in terms, the degree of that crime, and, thereby, the nature of the punishment which may be inflicted.

The indictment in this case sufficiently charged the crime of murder.

After the verdict of the jury that the defendant was guilty of murder in the first degree, the court, the defendant being present, announced that he had been convicted of murder in the first degree without any recommendation, and, as he elected to be shot, therefore it was ordered, adjudged, and decreed that he be taken, etc., and shot until he was dead. *Held* that this was a full compliance with the requirements of the statutes of Utah.

THE case is stated in the opinion.

*Mr. Warren N. Dusenberry* for plaintiff in error.

*Mr. Solicitor General* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

The plaintiff in error, Enoch Davis, was indicted in the First Judicial District Court of the Territory of Utah for murder, alleged to have been committed as follows:

"'The said Enoch Davis, on the sixth day of June, A.D. eighteen hundred and ninety-two, at the county of Uintah, in said Territory of Utah, in and upon one Louisa Davis, there being, wilfully, feloniously, and of his deliberately premeditated malice aforethought, did make an assault with a certain revolver by him, the said Enoch Davis, then and there had and held, with which said revolver he, the said Enoch Davis, her, the said Louisa Davis, upon the head did then and there wilfully, feloniously, and of his deliberately premeditated malice aforethought beat, bruise, and wound, thereby then and there inflicting upon the head of her, the said Louisa Davis, one mortal wound, of which the said Louisa Davis then and there instantly died, and so the grand jurors aforesaid so say that in manner aforesaid, he, the said Enoch Davis, her, the said Louisa Davis, then and there did kill and murder, contrary to the form of the statutes of said Territory, in such cases made and provided, and against the peace and dignity of the people aforesaid."

The defendant demurred to the indictment on the ground that it did not state facts sufficient to constitute a public offence. The demurrer was overruled, and he excepted. The defendant then pleaded not guilty. After trial, the jury returned the following verdict: "We, the jury empanelled in the above-entitled cause, find the defendant, Enoch Davis, guilty of murder in the first degree as charged in the indictment. Newell Brown, foreman."

There was a motion for a new trial upon various grounds. And defendant also moved in arrest of judgment upon the following grounds: first, the indictment does not charge murder in the first degree; second, the verdict against the

defendant of murder in the first degree was in excess of the offence charged in the indictment.

Under date of November 3, 1892, appears the following order of the court:

"The defendant being present in court, the motions for a new trial and in arrest of judgment having been separately argued by respective counsel, and the court now being fully advised therein, orders that said motions be overruled; to which order the defendant excepts. Defendant being present in court and being asked by the court if he had anything to say why sentence should not be now pronounced against him, and he answering in the negative, and said defendant having chosen to be shot instead of hanging:

"Thereupon the court rendered its judgment: Whereas you, the said Enoch Davis, having been duly convicted of the crime of murder in the first degree, without any recommendations whatever; it is therefore ordered, adjudged, and decreed that you, the said Enoch Davis, be taken hence to the penitentiary of the Territory of Utah, where you shall be safely kept until Friday, December 30, 1892, and that between the hours of ten in the forenoon and four in the afternoon on said day you be taken from your place of confinement to the jail or jail yard of the county jail of the county of Uintah, or some other private and convenient place in said county of Uintah, and that you then be shot till you are dead. You are hereby remanded into the custody of the U. S. marshal of Utah, who will see that this judgment and sentence of the court are carried out and executed. To which orders defendant excepts."

An appeal was taken to the Supreme Court of the Territory, and the judgment was affirmed.

Murder is declared by the statutes of Utah to be "the unlawful killing of a human being with malice aforethought." This is substantially murder as defined at common law. 4 Bl. Com. 195 ; 3 Inst. 47. And such malice may be express or implied; express, when there is manifested a deliberate intention unlawfully to take away the life of a fellow-creature; implied, when no considerable provocation appears, or when

the circumstances attending the killing show an abandoned or malignant heart. 2 Comp. Laws of Utah, 578, §§ 4452, 4453.

It is also provided, Ib. 579, §§ 4454, 4455, that "every murder perpetrated by poison, lying in wait, or any other kind of wilful, deliberate malice and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery, or perpetrated from a premeditated design, unlawfully and maliciously to effect the death of any other human being, other than him who is killed; or perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind, regardless of human life, is murder in the first degree; and any other homicide, committed under such circumstances as would have constituted murder at common law, is murder in the second degree;" further, that "every person guilty of murder in the first degree shall suffer death, or, upon the recommendation of the jury, may be imprisoned, at hard labor in the penitentiary for life, at the discretion of the court, and every person guilty of murder in the second degree shall be imprisoned, at hard labor, in the penitentiary for a term not less than five or more than fifteen years."

In respect to the forms of pleadings in criminal actions and the rules by which their sufficiency is to be determined, it is provided that the indictment must contain a clear and concise statement of the acts or omissions constituting the offence, with such particulars as to time, place, person, and property, as will enable the defendant to understand distinctly the character of the offence charged, and to answer the indictment; and must be direct and certain as regards the party and the offence charged, and the particular circumstances of the offence. The words used in the indictment are to be construed according to their usual acceptance in common language, except such words and phrases as are defined by law, and they are to be construed according to their legal meaning. Words in the statute defining a public offence need not be strictly pursued in the indictment, but other words conveying the same meaning may be used. 2 Comp. Laws of Utah, 687–8, §§ 4928, 4929, 4930, 4931, 4936, 4937.

In respect to the description of the offence, an indictment is sufficient, under the laws of Utah, if the act or omission charged as the offence is clearly and distinctly set forth, without repetition, and in such a manner as to enable the court to understand what is intended, and to pronounce judgment upon conviction according to the right of the case. Comp. Laws of Utah, vol. 2, § 4938.

The first assignment of error relates to the overruling of the demurrer to the indictment. The point here made is that as murder is defined by the statute to be the unlawful killing of a human being with malice aforethought, it was necessary to charge, in words, that the killing was "unlawful." This position cannot be sustained; for the facts alleged present, in clear and distinct language, a case of unlawful killing. It is not necessary, as we have seen, to use the very words of the statute defining the offence. It is sufficient if those used convey the same meaning. The indictment sets forth the case of an assault and battery, committed by the defendant wilfully, feloniously, and with deliberately premeditated malice aforethought, and resulting in instant death, whereby the defendant did kill and murder, contrary to the statute, etc. Such facts plainly import an unlawful killing.

Other assignments of error present the objection that the indictment is so framed that it will not support a verdict of guilty of murder in the first degree. This objection is based, in part, upon the theory that murder in the first degree and murder in the second degree are made distinct, separate offences. But this is an erroneous interpretation of the statute. The crime defined is that of murder. The statute divides that crime into two classes in order that the punishment may be adjusted with reference to the presence or absence of circumstances of aggravation. And, therefore, "whenever a crime is distinguished into degrees," it is left to the jury, if they convict the defendant, "to find the degree of the crime of which he is guilty." 2 Comp. Laws of Utah, 715, § 5076. If the defendant pleads guilty "of a crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree." Ib. § 5101. An in-

dictment which clearly and distinctly alleges facts showing a murder by the unlawful killing of a human being with malice aforethought is good as an indictment for murder under the Utah statutes, although it may not indicate, upon its face, in terms, the degree of that crime, and thereby the nature of the punishment that may be inflicted.   Of course, if an indictment is so framed as to clearly show that the crime charged is not of the class designated as murder in the first degree, the jury could not find a verdict of guilty of murder in that degree. But, as already suggested, the pleader need not indicate the degree, but may restrict the averments to such facts as, in law, show a murder, that is to say, an unlawful killing with malice aforethought, leaving the ascertainment of the degree to the jury, or, in case of confession, to the court.   As the acts which, under the Utah statute, constitute murder, whether of the highest or lowest degree, constituted murder at common law, it is clear that an indictment good at common law as an indictment for murder, in whatever mode or under whatever circumstances of atrocity the crime may have been committed, is sufficient for any degree of the crime of murder under a statute relating to murder as defined at common law, and establishing degrees of that crime in order that the punishment may be adapted to the special circumstances of each case.

These views are abundantly sustained by authority.  The earliest legislative enactment in this country by which degrees of murder were established was the Pennsylvania statute of April 22, 1794, "for the better preventing of crimes," etc. That statute recites as the reason for its passage that the several offences, which were included in the general denomination of murder, differed greatly in the degree of their atrocity, and that it was unjust to involve them in the same punishment.  It was consequently enacted that all murder perpetrated by means of poison, etc., should be deemed murder of the first degree, and all other kinds of murder should be deemed murder of the second degree, leaving the jury, if there was a trial, or the court, if the prisoner pleaded guilty, to ascertain from evidence the degree of the crime.   In the

Supreme Court of Pennsylvania, Chief Justice Tilghman said: "Now this. act does not define the crime of murder, but refers to it as a known offence; nor so far as it concerns murder in the first degree does it alter the punishment, which was always death. All that it does is to define the different kinds of murder, which shall be ranked in different classes, and be subject to different punishments. It has not been the practice since the passing of this law, to alter the form of indictments for murder in any respect; and it plainly appears by the act itself that it was not supposed any alteration would be made. It seems taken for granted that it would not always appear on the face of the indictment of what degree the murder was, because *the jury are to ascertain the degree* by their verdict, or, in case of confession, *the court are to ascertain it* by examination of witnesses. But if the indictments were so drawn as plainly to show that the murder was of the first or second degree, all that the jury need do would be to find the prisoner *guilty* in manner and form as he stands indicted." Yeates and Brackenridge, JJ., concurred in these views, the former observing, p. 188: "Different degrees of guilt exist under the general crime of murder, which is, therefore, arranged under two classes of murder of the first and second degree. The uniform practice since the act was passed has been to lay the offence as at common law." *White* v. *Commonwealth*, 6 Binney, 179, 182 (1813). The same principle was announced in *Commonwealth* v. *Flanagan*, 7 W. & S. 415, 418.

So, in *Wicks* v. *Commonwealth*, 2 Virginia Cas. 387, 391, decided in 1824 in Virginia, where the statute dividing the crime of murder into degrees was like that of Pennsylvania, it was said that the legislature did not intend to change, much less to divide, the common law crime of murder into two separate offences to be prosecuted and punished under two distinct indictments, but intended to graduate the punishment of each murder according to the circumstances under which it should be committed.

In *Green* v. *Commonwealth*, 12 Allen, 155, 170, the Supreme Judicial Court of Massachusetts, referring to the previous

cases of *Commonwealth* v. *Gardner*, 11 Gray, 438, and *Commonwealth* v. *Desmarteau*, 16 Gray, 1, said: "The reason on which these decisions were founded was this: that the statute establishing degrees of murder did not create any new offence or change the definition of murder as it was understood at common law; that the forms of indictment previously in use descriptive of murder embodied every shade or degree of the crime, from that which was most aggravated, malicious, and premeditated down to that which had only the element of implied malice in its most mitigated form; and that as the offence was not changed, but only its punishment mitigated in certain cases, the indictment was sufficient to embrace every species of murder, whether it fell within one or the other of the degrees of homicide as defined by the statute. The logical and necessary conclusion from these discussions is, that an indictment for murder at common law does charge murder in the first degree." To the same effect are many other adjudged cases, among which are *Graves* v. *State*, 45 N. J. Law, (16 Vroom,) 203, 206; *Mitchell* v. *State*, 8 Yerger, 513, 526; *People* v. *Murray*, 10 California, 309, 310; *People* v. *Dolan*, 9 California, 576, 584; *Kennedy* v. *People*, 39 N. Y. 245, 250; *People* v. *Conroy*, 97 N. Y. 62, 70; *State* v. *Lessing*, 16 Minnesota, 64, 66, 67; *State* v. *Verrill*, 54 Maine, 408, 415; *Gehrke* v. *State*, 13 Texas, 568, 573, 574; *McAdams* v. *State*, 25 Arkansas, 405, 416.

We are of opinion that the indictment in this case sufficiently charged the crime of murder. The acts constituting the crime are set forth with such clearness and distinctness that both the defendant and the court understood the character of the offence charged, and the court was enabled to pronounce judgment according to the right of the case. The defendant was charged with having wilfully, feloniously, and of his deliberately premeditated malice aforethought, assaulted the deceased with a revolver, with which he beat, bruised, and wounded her upon the head, inflicting a mortal wound, from which death instantly resulted, whereby, in the manner stated, the defendant killed and murdered the person so assaulted. The indictment alleges an unlawful killing with

malice aforethought and thereby a murder. It was not neces-
sary to allege, in express words, an intent to kill, because
murder, as defined by the statute, may be committed if the
killing be unlawful, and if no considerable provocation appears,
or the circumstances attending the killing show an abandoned
or malignant heart. Under the charge made in this case it
was competent to show by evidence, under section 4454 of the
Compiled Laws of Utah, that the killing was with wilful, delib-
erate malice, and was premeditated, and it was, perhaps, com-
petent to show that the killing, in the mode charged, was by
an act greatly dangerous to the life of the decedent, and " evi-
dencing a depraved mind, regardless of human life." In either
case, a verdict of murder in the first degree would have been
proper. If the evidence showed a case of homicide that under
the statute was not murder in the first degree, but was never-
theless committed under such circumstances as would have
constituted murder at common law, then the verdict should
have been that the defendant was guilty of murder in the sec-
ond degree. But as the evidence was not preserved in a bill
of exceptions, we cannot say that the verdict of guilty of mur-
der in the first degree was unauthorized by the facts adduced
at the trial. It certainly was within the scope of the indict-
ment.

Another assignment of error is that the court failed to
adjudge that the defendant was guilty of some offence. This
objection is supposed to be sustained by section 5100 of the
Compiled Laws of Utah, which provides : " After a plea or
verdict of guilty, or after a verdict against the defendant, on
a plea of a former conviction or acquittal, if the judgment is
not arrested, or a new trial granted, the court must appoint a
time for pronouncing judgment, which must be at least two
days after the verdict, if the court intend to remain in session
so long; or, if not, as remote a time as can reasonably be
allowed, but in no case can the judgment be rendered in less
than six hours after the verdict."

There is nothing in the record upon which this assignment
can be based. The motions for new trial and in arrest of judg-
ment having been overruled, and the defendant having been

asked, as required by the statute, (§ 5108,) if he had anything to say why sentence should not be pronounced, and having answered that inquiry in the negative, the court proceeded to judgment. The appellant insists that it was necessary that the court itself, in the exercise of its independent judgment upon the facts, and as a condition of its authority to sentence, should have adjudged that he was guilty of the crime charged before imposing the sentence prescribed by the statute. The court, the defendant being present, announced that he had been duly convicted of the crime of murder in the first degree, without any recommendation, and, therefore, it was "ordered, adjudged, and decreed" that he be taken, etc., and shot until he was dead. What the court said, on the occasion of the sentence, was, in effect, a judicial determination that the defendant had been duly convicted of the offence named. That was the only judgment it was necessary to render, and the sentence which followed gave legal effect to that adjudication. The statutes of Utah required nothing more.

There are no other assignments of error which require notice at our hands.

The judgment of the Supreme Court of the Territory is

*Affirmed.*