**Edward Ernest HARTMAN,**
**Petitioner–Appellant,**

v.

**R.C. LEE, Warden, Central Prison,**
**Raleigh, North Carolina,**
**Respondent–Appellee.**

**No. 01–16.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 25, 2002.

Decided March 5, 2002.

**ARGUED:** Benjamin Dowling Sendor, Office of the Appellate Defender, Durham, North Carolina, for Appellant. Gerald Patrick Murphy, Special Deputy Attorney General, North Carolina Department of Justice, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Heather Wells, Edwin L. West, III, P.L.L.C., Wilmington, North Carolina, for Appellant. Roy Cooper, Attorney General of North Carolina, North Carolina Department of Justice, Raleigh, North Carolina, for Appellee.

Before WILKINSON, Chief Judge, and WILKINS and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge WILKINS wrote the opinion, in which Chief Judge WILKINSON and Judge MICHAEL joined.

## OPINION

WILKINS, Circuit Judge.

Edward Ernest Hartman appeals an order of the district court denying his petition for a writ of habeas corpus.[1] *See* 28 U.S.C.A. § 2254 (West 1994 & Supp. 2001). Hartman primarily contends that his constitutional right to adequate notice of the

---

1. Hartman named R.C. Lee, Warden of Central Prison, as Respondent in his position. For ease of reference, we refer to Lee as "the State" throughout this opinion.

charges against him was violated by the use of a short-form indictment.[2] Because at least one judge of the panel has concluded that Hartman "has made a substantial showing of the denial of a constitutional right," 28 U.S.C.A. § 2253(c)(2) (West Supp.2001), we grant Hartman's application for a certificate of appealability, *see* 4th Cir. R. 22(a). We conclude, however, that the rejection of this claim by the North Carolina Supreme Court was neither contrary to, nor an unreasonable application of, clearly established federal law as decided by the Supreme Court. Accordingly, we affirm.

## I.

### A.

Until 1893, murder was an uncodified, common law crime in North Carolina. Beginning in 1887, North Carolina employed a "short-form" indictment for charges of murder. Currently codified at N.C. Gen. Stat. 15–144 (1999), the indictment statute provides that an indictment for murder is sufficient if, as is relevant here, it states "that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder" the victim.

In 1893, North Carolina followed the lead of other states and codified its murder statute; in so doing, it separated the offense of murder into two degrees. As presently codified, the murder statute provides:

A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of [enumerated felonies] shall be deemed to be murder in the first degree.... All other kinds of murder ... shall be deemed murder in the second degree....

N.C. Gen.Stat. § 14–17 (1999). When it thus codified the murder statute, the North Carolina legislature explicitly preserved the short-form indictment dictated by § 15–144:

"[N]othing herein contained shall be construed to require any alteration or modification of the existing form of indictment for murder, but the jury before whom the offender is tried shall determine in their verdict whether the crime is murder in the first or second degree."

*State v. Kirksey,* 227 N.C. 445, 42 S.E.2d 613, 615 (1947) (quoting Act of 1893, ch. 85, § 3).

■ Thus, under North Carolina law, all murders are alleged in short-form indictments pursuant to § 15–144; the jury is required to determine the degree of murder (first or second) when it deliberates regarding the defendant's guilt. *See State v. Watkins,* 283 N.C. 17, 194 S.E.2d 800, 808 (1973).

### B.

On June 3, 1993, Hartman shot Herman Smith, Sr. at close range in the back of the

---

**2.** Hartman also maintains that, under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the State violated his constitutional rights by failing to allege an aggravating circumstance authorizing imposition of the death penalty in the indictment. Hartman acknowledges, however, that this argument is foreclosed by the recent holding of the Fourth Circuit that *Apprendi* and *Jones* state a new rule of constitutional law that cannot be applied retroactively to cases on collateral review, *see United States v. Sanders,* 247 F.3d 139, 151 (4th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 573, 151 L.Ed.2d 445 (2001), and asserts that he raises the issue only as a means of preserving it for further review by the United States Supreme Court. Accordingly, we do not address it further.

head. Hartman had been living with Smith and believed him to be wealthy; robbery was the apparent motive for the murder. Hartman was subsequently arrested and confessed to the crime.

Consistent with N.C. Gen.Stat. § 15–144, Hartman was charged in a short-form indictment. The heading of the indictment identified the charged crime as "murder," listed Hartman as the defendant, and set forth the date of the crime. J.A. 158. The body of the indictment provided:

> The jurors for the State upon their oath present that on or about the date of offense [sic] shown and in the county named above the defendant named above unlawfully, willfully and feloniously did of malice aforethought kill and murder Herman Larry Smith, Sr. This being in violation of G.S. 14–17.

*Id.* At a motions hearing on May 4, 1994, the State made clear to Hartman that it sought to convict him of first degree murder on a theory of premeditation and that, in the event of such a conviction, it intended to seek the death penalty based on at least one aggravating factor, namely that the murder was committed during the course of a robbery.

Prior to trial, Hartman moved to dismiss the indictment on the basis that it failed to allege all of the necessary elements of first degree murder. The trial court denied the motion on the basis of previous decisions regarding the issue. Following a jury trial, Hartman was convicted of first degree murder; after the penalty phase, the jury sentenced him to death.

On direct appeal, Hartman again challenged the constitutionality of North Carolina's short-form indictment. The North Carolina Supreme Court summarily rejected this argument. *See State v. Hartman,* 344 N.C. 445, 476 S.E.2d 328, 347 (1996), *cert. denied,* 520 U.S. 1201, 117 S.Ct. 1562, 137 L.Ed.2d 708 (1997).

After pursuing state post-conviction review, Hartman filed this federal habeas action on October 14, 1999. As is relevant here, Hartman contended that "[t]he indictment . . . was insufficient to charge the offense of first-degree murder by the two theories of premeditation and deliberation and by felony murder because the indictment failed to allege all the essential elements of first-degree murder by these theories." J.A. 8. The district court rejected this argument, and Hartman now appeals.

## II.

### A.

Because the North Carolina Supreme Court adjudicated Hartman's challenge to the short-form indictment on the merits, we must determine whether "the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1). The Supreme Court has concluded that a state court decision is "contrary to" clearly established Supreme Court precedent when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision rests on an "unreasonable application" of clearly established Supreme Court precedent when "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

When, as here, the state court does not articulate the rationale for its decision, our review is no less deferential than it is when we review a detailed state court analysis of a petitioner's claim. *See Bell v. Jarvis,* 236 F.3d 149, 158, 163 (4th Cir. 2000) (en banc), *cert. denied,* —— U.S. ——, 122 S.Ct. 74, 151 L.Ed.2d 39 (2001). However, the procedure differs slightly: We must conduct an independent review of the record and the applicable law to determine whether the *result* reached by the state court "contravenes or unreasonably applies clearly established federal law." *Id.* at 163 (internal quotation marks omitted).

### B.

With these principles in mind, we turn to an analysis of Hartman's claim. Hartman's assertion that the North Carolina short-form indictment for murder violates the Constitution rests upon two premises: First, that the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment require that a state charging document include all elements of the charged offense; and second, that as a matter of state law, first degree and second degree murder are separate offenses comprising different essential elements. Hartman maintains that the decision of the state court was contrary to the first premise because, in light of the second premise, the state court could uphold the constitutionality of the short-form indictment only by concluding that due process does not, in fact, require that all elements of an offense

be alleged in the charging document. As explained below, we conclude that even if Hartman is correct with respect to his first premise, his argument founders on the second premise, because under North Carolina law, first and second degree murder are not distinct crimes, but rather are simply variations of the common law crime of murder.

Elementary principles of due process require that an accused be informed of the specific charge against him. *See Cole v. Arkansas,* 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948); *see also In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense ... are basic in our system of jurisprudence...."). This requirement is also imposed by the Sixth Amendment, which provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation." U.S. Const. amend VI. In this regard, the Due Process Clause and the Sixth Amendment provide essentially the same protection to defendants. *See Fawcett v. Bablitch,* 962 F.2d 617, 618 (7th Cir.1992).

Hartman maintains that the requirements of the Sixth and Fourteenth Amendments are satisfied only if the charging document sets forth all of the elements of the charged offense.[3] *But see* 4 Wayne R. LaFave et al., *Criminal Procedure* § 19.3(a) (2d ed. 1999) (characteriz-

---

**3.** We note that Hartman's claim is entirely formalistic in nature. He does not contend, nor could he, that he did not receive *actual* notice that the State sought to convict him of first degree murder.

Hartman also maintains that a murder indictment must "notify a defendant about which of several theories of first-degree murder the prosecution might pursue." Br. of

Appellant at 23. However, the Constitution does not require the method by which the crime was committed to be alleged in the indictment. *See Martin v. Kassulke,* 970 F.2d 1539, 1543 (6th Cir.1992) (holding that Due Process Clause did not entitle rape defendant to indictment specifying whether first degree rape was committed by force or through victim's physical helplessness).

ing suggestion "that the pleading of all essential elements is mandated by the notice requirement of the Sixth Amendment" as "a dubious proposition"). In support of this proposition, Hartman relies primarily on *Hodgson v. Vermont,* 168 U.S. 262, 18 S.Ct. 80, 42 L.Ed. 461 (1897).[4] Edward Hodgson was charged by information with selling liquor in violation of state law, and he maintained that the information was deficient because it failed to inform him, *inter alia,* of the date of the alleged offense, the type of liquor sold, and the buyer. Some of this information—particularly, the names of the purchasers known to the state—was supplied in a "specification." *Hodgson,* 168 U.S. at 264, 18 S.Ct. 80. In addressing Hodgson's claim, the Supreme Court acknowledged that

> in all criminal prosecutions the accused must be informed of the nature and cause of the accusation against him; that in no case can there be, in criminal proceedings, due process of law, where the accused is not thus informed, and

that the information which he is to receive is that which will acquaint him with the essential particulars of the offense, so that he may appear in court prepared to meet every feature of the accusation against him.

*Id.* at 269, 18 S.Ct. 80.

Hartman argues that this language stands unequivocally for the proposition that a prosecution comports with the Due Process Clause only when the defendant is notified of the elements of the charged offense *in the charging document.* We disagree. *Hodgson* certainly states that a defendant is entitled to notice of the charge against him, and we assume that Hartman is correct in contending that the "essential particulars" include all elements of an offense. However, nowhere does *Hodgson* say that the only constitutionally sufficient means of providing the notice required by the Sixth and Fourteenth Amendments is through the charging document.[5] Indeed, although it adopted the

**4.** Hartman also cites a number of cases concerning the adequacy of federal indictments. Of course, because the Fifth Amendment requirement of indictment by grand jury does not apply to the states, *see Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), "federal cases involving indictments are of little value when evaluating the sufficiency . . . of a state accusatory pleading," *Wilson v. Lindler,* 995 F.2d 1256, 1264 (4th Cir.) (Widener, J., dissenting), *adopted,* 8 F.3d 173, 175 (4th Cir.1993) (en banc) (per curiam); *see Wilson,* 995 F.2d at 1264 n. 6.

Although Hartman forswears reliance on *Jones* and *Apprendi,* he asserts that "[i]f those decisions were to apply retroactively . . ., they would support [his] position." Br. of Appellant at 7. However, even if *Jones* and *Apprendi* applied to cases on collateral review, they would not assist us in determining whether the decision of the state court was entitled to deference under § 2254(d)(1), because those cases were decided long after the ruling of the North Carolina Supreme Court. *See Williams,* 529 U.S. at 412, 120 S.Ct. 1495 (explaining that, in applying standard of

§ 2254(d)(1), a federal habeas court may only consider the holdings of the Supreme Court as they existed at the time of the state court ruling); *see also Boss v. Pierce,* 263 F.3d 734, 739 (7th Cir.2001) ("[I]n order to grant habeas corpus relief under section 2254(d)(1), a federal court must be able to point to the holding of a Supreme Court decision handed down before the state courts issued the decision under review.").

**5.** In this vein, we note we have found several cases in which deficient indictments were held not to violate the Sixth and Fourteenth Amendments when the defendant received actual notice of the charges against him. *See Stephens v. Borg,* 59 F.3d 932, 934–36 (9th Cir.1995) (holding that failure of indictment to charge felony murder did not violate Constitution when defendant "had five days of actual notice of the prosecution's intent to rely on a felony-murder theory" prior to closing argument); *Wilson,* 995 F.2d at 1264 (concluding that constructive amendment of indictment did not violate habeas petitioner's Sixth Amendment right when he received ac-

holding of the Vermont Supreme Court that the information properly charged the elements of the offense, the Court noted that any defects in the information were cured by the specification and expressly declined to decide whether an information that failed to allege all of the elements of a crime would be valid in the absence of a specification. *See id.* at 272, 18 S.Ct. 80 (stating that "the question of the validity of the information in the absence of any specification is not presented by this case, and we therefore express no opinion on it"). At the very least, it is surprising that Hartman can point only to a single Supreme Court case from over 100 years ago to support a proposition asserted to be bedrock constitutional law. Nevertheless, we will assume for purposes of deciding this appeal that Hartman's reading of *Hodgson* is correct.

The State argues that even if, under *Hodgson,* a state charging document is constitutionally deficient if it fails to set forth every element of the offense, Hartman is not entitled to habeas relief. According to the State, the decision of the North Carolina Supreme Court in Hartman's case cannot be considered unreasonable in light of two Supreme Court cases, *Davis v. Territory of Utah,* 151 U.S. 262, 14 S.Ct. 328, 38 L.Ed. 153 (1894), and *Bergemann v. Backer,* 157 U.S. 655, 15 S.Ct. 727, 39 L.Ed. 845 (1895), both of which addressed the constitutionality of short-form murder indictments.

In *Davis,* the defendant argued that his indictment—which charged him with mur-

dering the victim "willfully, feloniously, and of his deliberately premeditated malice aforethought," *Davis,* 151 U.S. at 263, 14 S.Ct. 328 (internal quotation marks omitted)—was inadequate to support a conviction for murder in the first degree because it failed to allege any of the factors distinguishing first-degree murder from second-degree murder. As the Supreme Court observed, "[t]his objection [was] based, in part, upon the theory that murder in the first degree and murder in the second degree are ... distinct, separate offenses." *Id.* at 266, 14 S.Ct. 328. The Supreme Court rejected this contention, concluding that "this is an erroneous interpretation of the statute. The crime defined is that of murder. The statute divides that crime into two classes, in order that the punishment may be adjusted with reference to the presence or absence of circumstances of aggravation...." *Id.*

As support for this conclusion, the Court examined the history of the statutory division of murder into degrees, noting that Pennsylvania was the first state to enact such a law. The Pennsylvania statute "recite[d] as the reason for its passage that the several offenses, which were included in the general denomination of 'murder,' differed greatly in the degree of their atrocity, and that it was unjust to involve them in the same punishment." *Id.* at 267, 14 S.Ct. 328. The Supreme Court also pointed to a decision of the Pennsylvania Supreme Court, which held that the statute " 'does not define the crime of murder, but refers to it as a known offense.... All

tual notice of prosecution's theory of case "at least before the jury was sworn, and almost certainly weeks before"); *Hulstine v. Morris,* 819 F.2d 861, 863–64 (8th Cir.1987) (holding that "[d]ue process requirements may be satisfied if a defendant receives *actual notice* of the charges against him, even if the indictment or information is deficient"; concluding that defective indictment did not violate de-

fendant's Sixth Amendment right because defendant was made fully aware of charges and potential punishment during guilty plea proceedings); *see also Fawcett,* 962 F.2d at 618 (concluding that defective state charging document does not violate due process unless "inadequate notice [leads] to a trial with an unacceptable risk of convicting the innocent").

that it does is to define the different kinds of murder, which shall be ranked in different classes, and be subject to different punishments.'" *Id.* at 268, 14 S.Ct. 328 (quoting *White v. Commonwealth,* 6 Binn. 179 (Pa.1813)); *see id.* (noting views of concurring justice, who stated that " '[d]ifferent degrees of guilt exist under the general crime of murder, which is therefore arranged under two classes.... The uniform practice, since the act was passed, has been to lay the offense as at common law'"). And, the Court cited cases from ten other states holding that the division of murder into degrees did not create separate offenses for first and second degree murder.

One year later, in *Bergemann,* the Court addressed the constitutionality of a short-form murder indictment under New Jersey law. Bergemann was charged with murder in a short-form indictment alleging that he "did willfully, feloniously, and of his malice aforethought kill and murder" the victim. *Bergemann,* 157 U.S. at 655, 15 S.Ct. 727 (internal quotation marks omitted). After he was convicted and sentenced to death, Bergemann petitioned for federal habeas relief on the basis that the short-form indictment did not adequately charge him with first-degree murder as that crime was defined by New Jersey law. The New Jersey murder statute provided as follows:

> All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in perpetrating or attempting to perpetrate, [enumerated felonies], shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree; and the jury ... shall ... designate by their verdict whether it be murder of the first or second degree.

*Id.* at 657, 15 S.Ct. 727 (internal quotation marks omitted). The Supreme Court rejected Bergemann's challenge to the adequacy of the indictment on the basis of New Jersey case law holding that the separation of murder into degrees did not "add any case to nor take any case from the class of crimes which, at common law, was denominated 'murder,' for every act that was murder at common law was still murder in New Jersey." *Id.* Since the factors which distinguished first degree murder from second degree murder were not elements of a separate offense, the Due Process Clause did not require that they be alleged in the indictment. *See id.* at 657–58, 15 S.Ct. 727.

■ Hartman argues that *Davis* and *Bergemann* are not relevant here because, as a matter of North Carolina law, first and second degree murder are separate and distinct offenses. In support of this assertion, Hartman points to several decisions of the North Carolina Supreme Court describing first and second degree murder as "offenses." *See, e.g., State v. Gainey,* 343 N.C. 79, 468 S.E.2d 227, 230 (1996) (characterizing second degree murder as "lesser-included offense" of first degree murder); *State v. Warren,* 327 N.C. 364, 395 S.E.2d 116, 120 (1990) (same); *State v. Young,* 324 N.C. 489, 380 S.E.2d 94, 96 (N.C.1989) (concluding that failure to instruct on voluntary manslaughter as alternative to second degree murder was harmless because jury convicted defendant "of the greater crime of murder in the first degree"); *State v. Davis,* 305 N.C. 400, 290 S.E.2d 574, 589 (1982) (referring to "murder in the first degree" as an "offense"). These cases will not bear the weight Hartman would place on them, however. Passing references to the "offenses" of first and second degree murder are of little assistance in determining whether first and second degree murder

are distinct crimes under North Carolina law.

Other North Carolina cases provide substantially more guidance. First, decisions issued in the years immediately following the passage of the 1893 law indicate that the intent of the North Carolina legislature was to follow the example of Pennsylvania in dividing the single, common law crime of murder into two degrees *without* creating any new offense. For example, in *State v. Fuller*, 114 N.C. 885, 19 S.E. 797 (1894), "the very first case involving a construction of the late act defining what constitutes murder in the first and second degrees," *id.* at 801, the North Carolina Supreme Court noted that the North Carolina legislature adopted Pennsylvania law almost verbatim, *see id.* at 801–02, for the purpose of "classify[ing] cases which before fell within the definition of murder, and to subject to the death penalty only the more heinous offenders," *id.* at 801. Importantly, the *Fuller* court explicitly stated that its interpretation of the act was in accord with that of Pennsylvania and states adopting the Pennsylvania statute:

> As far as we can ascertain, every other state had previously divided the common-law kind of murder into two classes. The theory upon which this change has been made is that the law will always be executed more faithfully when it is in accord with an enlightened idea of justice. Public sentiment has revolted at the thought of placing on a level in the courts one who is provoked by insulting words (not deemed by the common law as any provocation whatever) to kill another with a deadly weapon, with him who waylays and shoots another in order to rob him of his money, or poisons him to gratify an old grudge.... *Elsewhere the courts have generally followed the lead of Pennsylvania, and we, too, have adopted the interpretation given by her courts to the law which our legislature has borrowed from her statutes.*

*Id.* at 802. As noted in *Davis v. Territory of Utah*, the Pennsylvania courts, and states following their lead, uniformly interpreted the statute dividing murder into degrees not as creating two new crimes, but rather as dividing the single, common law crime of murder into two categories so that the punishment would better fit the particular crime. *See Davis*, 151 U.S. at 268, 14 S.Ct. 328.

The North Carolina Supreme Court made an even clearer statement in *State v. Davis*, on which Hartman relies for the proposition that first degree murder and second degree murder are distinct offenses:

> Prior to 1893 any intentional and unlawful killing of a human being with malice aforethought, express or implied, constituted murder punishable by death. In 1893 the General Assembly adopted 1893 N.C. Pub. Laws ch. 85, the terms of which are now embodied in G.S. 14–17, dividing murder into two degrees. *From that day to the present, this statute has not given any new definition of murder, but permits that to remain as it was at common law.* The statute merely selects from all murders denounced by common law those deemed most heinous by reason of the mode of their perpetration and classifies them as murder in the first degree, for which a greater punishment is prescribed.

*Davis*, 290 S.E.2d at 588 (emphasis added) (citations omitted); *see State v. Streeton*, 231 N.C. 301, 56 S.E.2d 649, 652 (1949) (noting that "the statute ... dividing murder into two degrees ... does not give any new definition of murder, but permits that to remain as it was at common law").

In view of these authorities, it is abundantly clear that under North Carolina

law, there is only one common law crime of murder, which by statute is divided into two degrees. Accordingly, just as in *Davis v. Territory of Utah* and *Bergemann*, a short-form indictment that alleges the elements of common law murder is sufficient to satisfy the demands of the Sixth and Fourteenth Amendments.[6] We therefore conclude that the decision of the North Carolina Supreme Court rejecting Hartman's challenge to his indictment was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

### III.

For the reasons set forth above, we affirm the denial of habeas relief.

*AFFIRMED.*

---

6. It is true that in several instances the North Carolina Supreme Court has used the term "elements" to refer to those factors that distinguish first degree murder from second degree murder. *See, e.g., Fuller*, 19 S.E. at 802 (noting that "premeditation and deliberation ... are essential elements of the higher crime"). In particular, Hartman points to *State v. Jerrett*, 309 N.C. 239, 307 S.E.2d 339, 350 (1983) (stating that "[t]he Legislature may prescribe a form of indictment sufficient to allege an offense even though not all of the elements of a particular crime are required to be alleged," and citing N.C. Gen.Stat. § 15–144 as an example), and *State v. Lowe*, 295 N.C. 596, 247 S.E.2d 878, 882–83 (1978) (characterizing premeditation as an "element" of first degree murder, stating that premeditation need not be alleged in an in-

dictment for first degree murder, and concluding that previous cases "implicitly affirm[ed] the power of the legislature to relieve the State of the common law requirement that every element of the offense be alleged"). The fact that the North Carolina courts have used the term "elements," rather than some other word, to describe those factors distinguishing first and second degree murder does not, in the face of the specific statements in *Fuller* and *Davis*, persuade us that the division of murder into degrees abolished the common law crime of murder.

Our conclusion that there is but one offense of common law murder in North Carolina is also fatal to Hartman's claim that subject matter jurisdiction is not established unless all the elements of a crime are alleged in the charging document.