# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 19-0999** (Putnam County 19-F-40)

**Morgan C. Vandergrift,**
**Defendant Below, Petitioner**

**FILED**

**December 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Morgan C. Vandergrift, by counsel Carl Hostler and Bryan Escue, appeals the October 18, 2019, order of the Circuit Court of Putnam County that sentenced him on one count of second-degree murder to forty years in prison. Respondent State of West Virginia, by counsel Lara K. Bissett, filed a response in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

While driving his car in May of 2018, petitioner struck a pedestrian, John Maynard (the "victim"), who died at the scene. Petitioner was indicted for the first-degree murder of the victim on March 6, 2019. On May 8, 2019, the State proposed a plea agreement wherein petitioner would plead guilty to second-degree murder and the State would stand silent at sentencing. Petitioner declined that offer.

At a July 10, 2019, pretrial hearing, petitioner's counsel moved to prohibit the State from seeking a conviction on any lesser-included offenses of first-degree murder at trial. Petitioner's counsel argued, "I think that's very important as we prepare, and we are preparing for murder one. That's our defense." The State responded:

> Your Honor, I think that will depend upon the evidence that is heard at trial, and therefore would be an issue that we would need to discuss at the conclusion of the case. I can tell you beginning with the case, I don't want any lesser includeds. I just want the jury to be instructed in the first degree. However, the defense may be able to articulate that this [c]ourt give lesser includeds [sic] instructions after the testimony is heard. So I don't think we should take this up right now.

1

Petitioner's counsel countered:

> If they want to stipulate that they are not going to bring up any lesser-includeds, then that would be our options [sic]. That will be a way that we can prepare for trial. But we don't want to have to start defending second-degree and involuntarily as we prepare for this trial in the belief that that's what they are going to it [sic]; that's a tactic that we feel that they've used, and we don't plan until we hear the evidence of the case.

The circuit court held the motion in abeyance, but said, "you always [have] the right to seek lesser-includeds, but [] the State has indicted your client on murder one, and that's what they are pursuing." Petitioner's counsel asserted that petitioner relied on the State's claim in preparing his defense, that petitioner made a knowing and intelligent decision to proceed with an "all or nothing" defense, and that the defense would focus on petitioner's lack of mens rea[1] for first degree murder.

On July 18, 2019, eight days after the pretrial hearing, the trial court entered its pretrial order that addressed petitioner's motion to prohibit the State from seeking a conviction on any lesser-included offenses. That order provides:

> The defense . . . verbally moved the [c]ourt to prohibit the State from seeking a lesser-included conviction at trial. The State argued that said motion was not yet ripe and that the issue of whether a jury should be instructed on lesser-included crimes would arise after the evidence was submitted to the jury. Upon review of the relevant caselaw, the [c]ourt [citing Syl. Pt. 4, *State v. Wallace*, 175 W. Va. 663, 337 S.E.2d 321 (1985)] FINDS that [petitioner] does not have the right to preclude the State from seeking a lesser included offense instruction where it is determined that the offense is legally lesser included and that such an instruction is warranted by the evidence.

Petitioner's four-day trial commenced on August 13, 2019. The State presented the following testimony during its case-in-chief:

Charles Edwards, the victim's neighbor, testified on direct examination that on the afternoon of May 9, 2018, the victim rode his four-wheeler to the Edwards's home and parked near the end of their driveway. At that same time, Mr. Edwards looked up the road and saw two school buses making their daily rounds. One of the buses had its flashing lights on and its stop sign extended. He then saw a car pass the buses and the victim get off his four-wheeler and gesture to, and yell at, the driver of the car, Petitioner Morgan C. Vandergrift, to slow down. Instead, petitioner accelerated, swerved to the right, and struck the victim, who was knocked in the air, turned a somersault, and landed twenty feet into the Edwards's yard. Mr. Edwards testified that petitioner never let off the gas, even when he hit the victim. On cross-examination, Mr. Edwards

---

[1] Black's Law Dictionary defines "mens rea," in part, as "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime." 1134 (10th ed. 2014).

testified that, prior to striking the victim, petitioner hit a speed bump, making a "loud boom." Mr. Edwards also said that petitioner's car did not change directions after hitting the speed bump. Finally, Mr. Edwards testified that he believed petitioner intentionally swerved to hit the victim. On rebuttal, Mr. Edwards testified that there was no obstruction between the road bump and his driveway that would have caused petitioner to swerve.

Mr. Edward's wife, Ellie Edwards, testified as follows: She did not see petitioner pass the school buses, but she heard the bus horns honking and people yelling. She turned just in time to see the victim get off his four-wheeler and walk to the end of her driveway. The victim was holding a beer can in one hand as he waived his arms and yelled "slow down." She said the victim did not throw the beer can at petitioner's car. She saw petitioner hit the speed bump at a high rate of speed and continue to accelerate. She said petitioner "kind of turned up the driveway, hit [the victim], went up the ditch line, and back out on the road." She also testified that there was nothing in the roadway to cause petitioner to swerve toward her driveway.

Patty Joseph testified that, on the day of the accident, she stopped her car near the Edwards's home to wait on the school buses. She said the second bus had pulled up, and its lights were flashing when petitioner's car came around the bus and sped past her. Through her side-view mirror, she saw the victim get off his four-wheeler and wave at petitioner to slow down. She looked away, but when she looked back, she saw the victim flying through the air. She said she instantly knew that the victim was dead. Finally, she testified that as petitioner was driving toward her, he was driving straight, not swerving, and he had his car under control.

School bus driver Jim Sovel testified as follows: After the students exited his bus, he pulled into the turnaround to allow the driver of the other bus, Jerry Hicks, to drop off his students. At that point, he saw petitioner's car coming toward the buses "rather fast." He said that Mr. Hicks's bus was stopped with its red lights flashing and its stop sign out. He observed that there was not enough room for both Mr. Hicks's bus and petitioner's car on the road. He said that petitioner's car went into a culvert when it passed Mr. Hicks's bus and accelerated rapidly, revving the engine as it came out of the culvert. He said he did not see petitioner's car hit the victim, but he did see the victim lying on the ground.

Jerry Hicks, the other school bus driver, testified that petitioner's car passed his bus while it was stopped with its red lights flashing and its stop sign out. Mr. Hicks said petitioner was accelerating when he passed the bus, and that he saw the victim get off of his four-wheeler and wave his arms to try to get petitioner to slow down or stop. Mr. Hicks said petitioner never hit the brakes and never stopped accelerating before he hit the victim. He stated that he saw petitioner leave the blacktop, drive through the grass to the edge of the driveway, hit the victim, and then keep on going. Mr. Hicks said that petitioner's car hit the victim just below the knee and, on impact, the victim flipped in the air and then hit the windshield of petitioner's car. Mr. Hicks also said that petitioner's car carried the victim for about twenty or thirty feet until the victim slid off the car into a ditch. Mr. Hicks averred that petitioner's car continued to accelerate and went out of sight. Finally, Mr. Hicks testified that he saw nothing in the roadway that would have caused petitioner to veer into the Edwards's driveway.

3

Brittany Gilbert testified that she was petitioner's friend, that she lived in the victim's neighborhood, and that petitioner drove his car up her driveway at a high rate of speed with damage to his windshield. She asked petitioner what was wrong, and he replied, "He hit me with the beer can." Petitioner stayed in or near Ms. Gilbert's driveway, about three-hundred feet from the accident scene, and waited for the police.

Chief medical examiner Allen Mock, M.D., testified to his post-mortem examination of the victim's body. He testified that the victim had a large skull fracture with a related fracture at the base of the brain that separated the victim's brain from his brain stem. Dr. Mock said the victim's injuries suggested that "the main force of injury was throwing the head back most likely" with "so much energy that it literally cause[d] the back of the skull to pull away from the remaining skull." Dr. Mock also found a fracture in one of the victim's legs. Dr. Mock concluded that the victim's "near instantaneous death" was caused by "[b]lunt force trauma of the head and neck with laceration . . . tearing of the brain, as a pedestrian struck by a recklessly operated vehicle with uncertain intent." On cross-examination, petitioner's counsel told Dr. Mock that petitioner's bumper was twenty-three inches from the ground. Given that information, petitioner's counsel asked if Dr. Mock could draw a conclusion whether petitioner was braking when his car struck the victim given the victim's leg injury. Dr. Mock answered that such a scenario suggested that "the vehicle was braking at the time of impact." On redirect, Dr. Mock was shown a picture of the scene which revealed that the victim was standing on an incline. Dr. Mock responded that "certainly, if you're elevated above the [car's bumper] would be falsely lowered on the body."

Tyson Edwards, the deputy sheriff at the scene of the accident, testified that petitioner told him the following: that as petitioner "was coming down the road, there was a guy there standing at the end of the driveway. He was yelling and waving his hands, screaming. And the male had thrown a beer at his windshield causing him to lose control of his vehicle." Deputy Edwards also testified that petitioner seemed mildly lethargic and was slurring his words.

Sgt. Chad Ashley testified regarding (1) tire tracks showing where petitioner had gone into the culvert while passing Mr. Hicks's bus, (2) marks petitioner's car left on the speed bump, and (3) tire tracks showing that petitioner's car left the road, traveled across the Edwards's driveway, through a ditch, and back onto the roadway. Sgt. Ashley also testified that he saw no indication that petitioner's car slid or exhibited a loss of control between the speed bump and the Edwards's driveway.

Expert Ronald Thayer testified to the data obtained from petitioner's car's airbag control module (the "black box"). Mr. Thayer said the black box makes a recording every second or two, but a recording can be off by two-tenths of a second. Mr. Thayer said that petitioner's black box showed a substantial braking event, taking the vehicle from fifty-four miles per hour to forty-two miles per hour, from five seconds to four seconds before impact. However, from four seconds to three seconds before the impact, the speed of the vehicle increased slightly. From three seconds to two seconds before the impact, "there was a little more acceleration." And, "we see possibly some braking going on at the one second and . . . [t]he brake switch was active." Mr. Thayer also said that at

one second [before impact] it's indicting it's losing some speed; it's slowing. Could that be a [drive] train issue? Yes. Could it be driver foot on gas, foot on brake? Yes. Could it be changing circumstances? Yes. Without further reconstruction, it would be an educated guess and I don't want to go there.

Mr. Thayer opined that petitioner was applying more pressure on the brakes at five seconds to impact than at one second to impact.

State Police Cpl. W.F. Donohoe, who was qualified as an expert in accident reconstruction, testified to his examination of petitioner's tire marks. Cpl. Donohoe concluded that petitioner was not braking or losing control as he approached the Edwards's driveway and that he traveled across the driveway "without a hard brake." He also said there was no sign petitioner was "laying on the brakes" or losing control of his car when he came out of the culvert, crossed the driveway, hit petitioner, and then left the Edwards's property.

At the close of the State's case-in-chief, the circuit court denied petitioner's motion for a judgment of acquittal. Petitioner avers that his motion was focused solely on first-degree murder and that the State's response mentioned only first-degree murder.

The defense called only one witness, Dave Harris, an accident reconstructionist. Mr. Harris said that, by and large, he agreed with Mr. Thayer's testimony regarding the data from the black box and where and when different events occurred. Mr. Harris then testified regarding perception response time, i.e., "the time it takes . . . to record a hazard, formulate a proper response, and execute your response." Mr. Harris opined that petitioner could not have intentionally hit the victim because there was not enough time in the 1.6 second response time. On cross-examination, the State highlighted that Mr. Harris's diagrams and models were rebutted by four eyewitnesses.

At the close of all evidence, the circuit court denied petitioner's renewed motion for a judgment of acquittal. Petitioner avers that his motion was focused solely on first-degree murder and that the State's response mentioned only first-degree murder. The State then sought jury instructions on the lesser-included offenses of second-degree murder and voluntary manslaughter. Petitioner's counsel countered, "Not so much a motion, but a ruling, your honor. I believe as part of the [j]ury instructions there's the lesser[-]included offenses. We were here on July 10th at which time I asked the [c]ourt for a ruling." The trial court replied,

And I gave you one in my [July 18, 2019,] pretrial order.

My order indicated that I was denying your motion because under . . . *State [v.] Wallace* [175 W.Va. 663, 337 S.E.2d 331 (1985),] . . . which . . . the . . . Court affirmed in *Redman* [*v. Ballard*, No. 14-0894, 2015 WL 5125826, at *22 (W. Va. Aug. 31, 2015)], that either side, either the State or the defense, does have the right to seek to have the [j]ury instructed with regard to lesser[-]included offenses. And the *Wallace* case particularly indicates the defendant does not have the right to preclude the State from seeking lesser[-]included offense instruction[s] where it is determined that the offense is legally lesser[-]included and that such instruction is warranted by the evidence. I have – if you want to renew your motion on some

5

other basis, you can, I guess. But as far as the law goes, I think the West Virginia Supreme Court is pretty clear on that.

Thereafter, the circuit court instructed the jury on first-degree murder, second-degree murder, and voluntary manslaughter. The jury found petitioner guilty of second-degree murder.

Post-trial, petitioner moved the circuit court for a new trial claiming, among other things, that he was denied due process and that insufficient evidence was adduced at trial to sustain a second-degree murder verdict. Petitioner also argued that if he had known that lesser-included offenses would be included in the jury charge he would have taken the stand in his own defense. The court responded, "Isn't that something that you all could have done if you had elected to do that? I mean, you have the right to seek lesser includeds as well." Petitioner's counsel responded that petitioner "instructed us to go with an all or nothing defense and that's exactly what we did." The court denied petitioner's motion by order entered October 17, 2019. On October 18, 2019, the court sentenced petitioner to forty-years in prison.

Petitioner now appeals.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

Petitioner raises two assignments of error on appeal. Petitioner first argues that his right to due process was violated by the State's late inclusion of lesser-included offenses.

We have said, "'[T]he question of whether a jury was properly instructed is a question of law, and the review is *de novo*.' Syl. Pt. 1, in part, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996)." Syl. Pt. 2, *State v. Henning*, 238 W. Va. 193, 793 S.E.2d 843 (2016).

On appeal, petitioner argues that the State's motion to instruct the jury on the lesser-included offenses following the close of all evidence was "tantamount to a mid-trial reindictment." Petitioner further argues that due process requires notice and an opportunity to be heard in a meaningful manner, and that he could not have been meaningfully heard because the State's tactics made notice "far more elastic than intended."

Petitioner further claims that he opted not to testify at his trial because he did not believe that the State proved he committed first-degree murder during its case-in-chief. Petitioner avers that he was sandbagged due to the absence of pretrial notice that the State would seek to add lesser-included offenses near the end of trial. Petitioner argues that if the State had notified him pretrial that it intended to seek jury instructions on lesser-included offenses, he might have testified, his closing would have been different, and/or he might have conceded voluntary or involuntary

manslaughter. Finally, petitioner argues that, given the timing of the State's request for the lesser-included instructions, his counsel had insufficient time to redraft their closing arguments to petitioner's prejudice.

We find no denial of due process. We first note that the State's submission of its proposed jury instructions to petitioner at the close of all evidence complied with Rule 30 of the West Virginia Rules of Criminal Procedure. That rule provides, in part:

> *At the close of the evidence* or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. *At the same time, copies of such requests shall be furnished to all parties*. The court shall inform counsel of its proposed action upon the requests and disclose to counsel all other instructions it intends to give before the arguments to the jury are begun and the instructions given by the court.

W. Va. R. Crim. P. 30 (emphasis added). Here, the trial court directed the parties to exchange their proposed jury instructions at the close of all evidence in compliance with Rule 30. The State complied by presenting their proposed jury instructions to petitioner at the time.

Second, at the pretrial hearing, the State correctly noted that petitioner's motion to preclude jury instructions on any lesser-included offenses could not properly be addressed until the close of all evidence. A week later and three-and-a-half weeks prior to trial, the circuit court, in its pretrial order, clearly denied petitioner's motion to preclude the State from seeking lesser-included offenses at petitioner's trial. The court based that ruling on syllabus point 4 of *Wallace*, in which we held that "[a] defendant does not have the right to preclude the State from seeking a lesser included offense instruction where it is determined that the offense is legally lesser included and that such an instruction is warranted by the evidence."

*Wallace* is directly on point here. In *Wallace*, the defendant was charged with two counts of first-degree sexual assault. Mr. Wallace argued that he had the right to foreclose the State from seeking a lesser-included offense instruction because the State chose to indict him on first-degree sexual assault thereby foreclosing it from seeking a lesser-included verdict. *Id.* at 666, 337 S.E.2d at 324. The *Wallace* Court responded that

> [Mr. Wallace's] argument ignores the generally recognized origin of the concept of lesser included offenses which is that it was originally developed to aid the prosecution as summarized in *Beck v. Alabama*, 447 U.S. 625, 633, 100 S.Ct. 2382, 2387–88, 65 L.Ed.2d 392, 400 (1980):
>
> > "At common law the jury was permitted to find the defendant guilty of any lesser offense necessarily included in the offense charged. This rule originally developed as an aid to the prosecution in cases in which the proof failed to establish some element of the crime charged. See 2 C. Wright, Federal Practice and Procedure § 515, n. 54 (1969)." (Footnote omitted).

7

*See also Neider*, 170 W.Va. at 665-666 n. 3, 295 S.E.2d at 905–06 n. 3.

*Id.* at 666, 337 S.E.2d at 324–25; *see also* Syl., in part, *State v. Allen*, 131 W. Va. 667, 49 S.E.2d 847 (1948) (holding, in part, that "it is error not to instruct the jury on the nature, elements and punishment for the offense to which such evidence relates, when request therefor is made either by the State or the defendant"). Here, the evidence supported jury instructions on the lesser-included offenses of murder in the second degree and voluntary manslaughter, and, under *Allen*, it would have been error for the trial court not to give those instructions.

As for petitioner's claim that the lesser-included offense instructions were "tantamount to a mid-trial reindictment[,]" Rule 31(c) of the West Virginia Rules of Criminal Procedure provides that "[a] defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense." *See Hartman v. Lee*, 283 F.3d 190 (4ᵗʰ Cir. 2002) (concluding that a short-form indictment charging first-degree murder was constitutionally sufficient to put defendant on notice that second-degree murder, voluntary manslaughter, and involuntary manslaughter are lesser-included offenses of murder); *United States v. Mumford*, 991 F.2d 797 (6ᵗʰ Cir. 1993) (concluding that simple possession is an element of possession with intent to distribute, thus a simple possession instruction was not error); *State v. Davis*, 205 W. Va. 569, 582, 519 S.E.2d 852, 865 (1999) (stating that the elements of second-degree murder are a subset of the elements of first-degree murder);.

Moreover, in *State v. Bland*, 239 W. Va. 463, 801 S.E.2d 478 (2017), the defendant argued that the magistrate court erred by instructing the jury on domestic assault when he was charged only with domestic battery. The Court responded that "a defendant may be convicted of a lesser[-]included offense of the specific charge set forth in the indictment without violating the constitutional notice requirement." *Id.* at 467, 801 S.E.2d at 482 (quoting *State v. Henning*, 238 W. Va. 193, 196, 793 S.E.2d 843, 846 (2016)); *see also* W. Va. R. Crim. P. 31(c) (providing that "[a] defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense").

Here, petitioner was not denied due process. Instead, he chose to gamble with an all-or-nothing defense that focused solely on his alleged lack of premeditation, deliberation, and willfulness. That decision in no way changes the propriety of the trial court's instructions. Accordingly, we find no error.

In petitioner's second and final assignment of error, he argues that the jury's second-degree murder verdict was not supported by the evidence.

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

Petitioner claims that the jury found him guilty of second-degree murder due to the testimony of biased witnesses who were emotionally close to the victim. Petitioner also claims that (1) the evidence regarding intent was completely circumstantial, and (2) the evidence from the black box in his car and the testimony of the State's witnesses and petitioner's witness proved his lack of malice.

We have long held that

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

*Id.* at 663, 461 S.E.2d at 169, syl. pt. 3.

The evidence adduced at trial was more than sufficient to support the jury's second-degree murder verdict. At petitioner's trial, no fewer than five eyewitnesses testified on the State's behalf. Three of those eyewitnesses (the victim's neighbors, Charles and Ellie Edwards, and school bus driver, Jeremy Hicks) testified that they saw petitioner swerve into the Edwards's driveway without slowing down and strike the victim with his car. Mr. Hicks also testified that he never saw the brake lights activate on petitioner's car. The jury also heard from Sgt. Ashley, Ronald Thayer, and Cpl. Donohoe, who testified about their investigations. Sgt. Ashley testified that petitioner's tire tracks corroborated the eyewitness testimony about the path of petitioner's car. Mr. Thayer's testimony regarding the "black box" data corroborated the testimony that petitioner sped through the neighborhood up to and after he killed the victim. Mr. Thayer also testified that petitioner was braking harder at five seconds before the impact than he was at one second before the impact. Cpl. Donohoe testified that the physical evidence showed petitioner was not applying his brakes when he crossed the Edwards's driveway and struck the victim. Conversely, petitioner called only one witness whose testimony was contradicted by four eyewitnesses.

"In the trial of a criminal prosecution, where guilt or innocence depends on conflicting evidence, the weight and credibility of the testimony of any witness is for jury determination." Syl. Pt. 1, *State v. Harlow*, 137 W. Va. 251, 71 S.E.2d 330 (2006). Here, the jury clearly believed

beyond a reasonable doubt that petitioner killed the victim unlawfully, willfully, intentionally, and with malice. Accordingly, we reject petitioner's second and final assignment of error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** December 7, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison